

The following constitutes the
Memorandum Decision of the Court.
Signed February 2, 2017

Roger L. Efremsky
U.S. Bankruptcy Judge

UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF CALIFORNIA
OAKLAND DIVISION

In re

FLORO T. ZARATE AND
PATRICIA G. ZARATE,

        Debtors.
_____/

JOSEPH AND JULIANA TABURAZA,
et al.,

        Plaintiffs,

vs.

FLORO T. ZARATE AND
PATRICIA G. ZARATE,

        Defendants.
_____/

Case No. 14-42250 RLE
Chapter 7

Adversary Proceeding
No. 14-4119

Memorandum Decision on
Plaintiffs' Motion for
Attorney's Fees and Costs
and Order Thereon

## I. Introduction

On September 15, 2016, the court entered a stipulated judgment in favor of plaintiffs Joseph and Juliana Taburaza. The

judgment states that defendants owe a non-dischargeable debt of $831,018.31 to plaintiffs. October 13, 2016, plaintiffs filed this motion for an award of attorney's fees and costs as the prevailing party in the adversary proceeding. Defendants opposed this motion. The matter has been fully briefed and argued. This is the court's findings of fact and conclusions of law as required by Fed. R. Bankr. P. 7052.[1]

**II. Background**

    **a. The 2005 Aset Purchase Agreement**

In June 2005, the parties entered into an Asset Purchase Agreement (the "APA") by which defendants agreed to sell two skilled nursing facilities (the "Facilities") to plaintiffs. Defendants operated the Facilities through Tru-Care, Inc., a California corporation. Defendants owned a 60% interest, and plaintiffs owned a 40% interest, in the Tru-Care shares and in the two pieces of real property (known as "Milpitas" and "Wisteria") on which the Facilities operated. APA, Recital A.

The transaction contemplated by the APA was a transfer to plaintiffs of defendants' Tru-Care shares or the Tru-Care assets, and of defendants' 60% interest in Milpitas and Wisteria. At closing, plaintiffs were to pay the secured debt on Milpitas and Wisteria and assume certain obligations of the business including certain tax debts. APA, §2.1-2.4.

---

[1] Unless specified otherwise, all chapter and section references are to the Bankruptcy Code, 11 U.S.C. §101-1532; all "Rule" references are to the Federal Rules of Bankruptcy Procedure, Fed. R. Bankr. P. 1001-1037; all "Civil Rule" references are to the Federal Rules of Civil Procedure, Fed. R. Civ. P. 1-86.

Relevant to this dispute, Recital C of the APA described what plaintiffs agreed to pay as the "major obligations" and "estimated balances" related to Milpitas, Wisteria, and Tru-Care: two secured loans on Milpitas totaling $1,275,791; two secured loans on Wisteria totaling $812,188; $28,000 owed under a settlement agreement; $100,000 owed to an individual named Vicki Gaceta Smith; and estimated employment tax obligations of $400,000. APA, Recital C.

The closing was to take place 90 days after execution of the APA. APA, §6.1. The defendants were to manage the Facilities until plaintiffs obtained the required regulatory approvals to operate the Facilities. APA, §3.1. Section 3.1 stated that defendants would not incur any new liabilities except in the ordinary course of business during this interim period. Article 4 described defendants' representations and warranties. Defendants represented that there were no unpaid tax debts other than the $400,000 disclosed in Recital C, and that their representations were true and did not omit anything material. APA, §4.1(d) and §4.1(t).

If plaintiffs were unable to obtain the regulatory approvals by the contemplated 90-day closing date, plaintiffs could extend the closing date by 6 months. APA, §8.1(a)(i). In addition, if the regulatory approvals were not obtained in the extended 6 month period, plaintiffs could either proceed or elect not to proceed with the purchase. APA, §8.1(a)(ii).

Article 11, entitled Post Closing Covenants, contained the following provision:

Case: 14-04119   Doc# 86   Filed: 02/02/17   Entered: 02/02/17 15:42:03   Page 3 of 21

> 11.6(a) Sellers agree to defend, indemnify and hold Buyers
> ... harmless from and against any and all loss, damage,
> liability, action or proceeding, including without
> limitation, attorney's fees, ("Loss") resulting from or
> arising out of (i) any inaccuracy in or breach of any
> representation, warranty, covenant, or obligation made or
> incurred by Sellers herein or in any other agreement.

Section 11.6(b) provided the same protection to Sellers. Section

11.6(c) described the procedures to be followed "[i]f any legal

proceedings shall be instituted or any claim is asserted by any

third party in respect of which any Party may be entitled to

indemnity hereunder." APA, §11.6(c).

Article 12, entitled Miscellaneous, contained the following

provision:

> §12.9 Attorneys Fees. In event suit is brought or an
> attorney is retained by any party to this Agreement to
> enforce the terms of this Agreement or to collect any moneys
> due hereunder, the prevailing party shall be entitled to
> recover reimbursement for reasonable attorneys' fees, court
> costs, costs of investigation and other related expenses
> incurred in connection therewith.

**b. The 2009 Amendment to the Asset Purchase Agreement**

For reasons that are not entirely clear, the closing did not

take place as described in the APA and it may never have taken

place. However, in 2009, the parties executed the First Amendment

to Purchase Agreement and Assignment and Assumption Agreement

(the "2009 Agreement"). The 2009 Agreement incorporated the

provisions quoted above. It also stated that the parties had

entered into a management agreement and a lease of the Mipitas

and Wisteria real properties effective as of April 1, 2009 or the

date plaintiffs received regulatory approval.

According to Recital C of the 2009 Agreement, the APA was

amended to allow plaintiffs to waive their due diligence closing

*Memo. Decis. Fees & Costs*        4

conditions, amend the closing date, amend certain representations and warranties in connection with the management agreement, and update the outstanding financial obligations relating to Milpitas and Wisteria and the business. 2009 Agreement, Recital C.

Section 6 of the 2009 Agreement, entitled Amended Financial Obligations, provided that Recital C of the APA was replaced with a new listing of the "major obligations" and their "estimated balances" as of April 1, 2009. The new list included the two secured loans on Milpitas with slightly lower balances totaling $1,193,437, and the two secured loans on Wisteria with slightly lower balances totaling $753,080; the same $100,000 owed to the individual named Vicki Gaceta Smith, and the same $400,000 estimated employment tax obligation. 2009 Agreement, §6.

Plaintiffs later discovered defendants had failed to disclose significant liabilities. This prompted plaintiffs to sue defendants in state court for breach of contract and obtain a $1.34 million default judgment.

### c. The Complaint and Answer

Soon after defendants filed their bankruptcy case, plaintiffs initiated this adversary proceeding. AP Docket no. 1. The first claim for relief was based on a theory of fraud in the inducement under §523(a)(2)(A). The essential allegations were that defendants had, with intent to deceive, "misrepresented facts, concealed and failed to disclose" material facts in order to induce plaintiffs to enter into the 2009 Agreement, resulting in damage of $1.34 million. In the prayer, plaintiffs sought judgment for the amount of this debt plus pre-judgment interest,

*Memo. Decis. Fees & Costs* 5

contractual attorneys fees, costs, and disbursements.[2]

Defendants answered the complaint, generally denying its essential allegations. AP docket no. 8.

**d. The Summary Judgment Rulings**

In July 2015, plaintiffs filed a motion for summary judgment. AP docket nos. 20-24, 26. In response, defendants admitted they had failed to disclose multiple material obligations and admitted that a debt of some amount was non-dischargeable but that plaintiffs had not established the amount of the damages resulting from the defendants' non-disclosures. AP docket nos. 27-28.

Plaintiffs filed supplemental declarations in an effort to establish the amount of their damages. AP Docket nos. 37, 39. Defendants responded that the plaintiffs had again failed to prove their damages. AP docket no. 38. At the hearing held on January 7, 2016, the court found that plaintiffs had failed to establish their damages with any precision and summary judgment was denied except as to $32,468 for certain unpaid medical insurance premiums.

At this point, the parties agreed to attend judicial mediation. However, this mediation was ultimately unsuccessful and in May 2016, the court set a trial date of August 25, 2016.

**e. The Stipulated Judgment**

At the beginning of the trial on August 25, 2016, the parties announced that they had reached a settlement by which

---

[2] All other claims for relief in the complaint were abandoned prior to trial.

Case: 14-04119   Doc# 86   Filed: 02/02/17   Entered: 02/02/17 15:42:03   Page 6 of 21

defendants agreed that $831,018.31 was a non-dischargeable debt. On September 15, 2016, the court entered the judgment. AP docket no. 71.

**f. The Motion for Attorney's Fees**

On October 13, 2016, plaintiffs filed this motion for an award of attorney's fees and costs. AP docket nos. 73-75. The motion seeks an award of $316,887.00 in attorney's fees pursuant to Rule 7054, California Code of Civil Procedure §1021 and §1032, and California Civil Code §1717, and $11,748.25 in costs pursuant to 28 U.S.C. §1920. (Plaintiffs' motion repeatedly refers to "California Code of Civil Procedure §1717" which is obviously incorrect. The section is California Civil Code §1717.)

Defendants' opposition argues that the motion is untimely because Civil Rule 54(d)(2)(B), applicable here by Rule 7054(b)(2), requires such a motion to be filed no later than 14 days after the entry of judgment. The opposition also argues that fees are not allowed under California law because this was not an action on a contract; it was a tort action based on a fraud in the inducement theory. Finally, defendants argue that the requested fees and costs are excessive because the request includes fees and costs incurred in the state court litigation. AP docket no. 82.

**III. Discussion**

**a. Timeliness of the Motion**

The court will first dispose of the defendants' timeliness argument. It is true that the motion was not filed within 14 days

*Memo. Decis. Fees & Costs*                    7

of entry of the judgment as required by Rule 7054(b)(2) which makes Civil Rule 54(d)(2)(B)(i) applicable here. It is also true, as defendants point out, that neither defendants nor the court agreed to any extension of time. However, the discussion on the record on August 25, 2016, when the parties announced their settlement, may have led plaintiffs to believe that filing this motion within 30 days was acceptable.

The court does not necessarily agree with this interpretation. Nevertheless, if plaintiffs had sought an order extending their time under Rule 9006 and the relevant excusable neglect analysis under _Pioneer Investment Services Co. v. Brunswick Assoc. Limited Partnership_, 507 U.S. 380 (1993), the court would have exercised its discretion to grant it. To the extent necessary, the court grants such an extension now. For these reasons, the court will consider the motion timely and deal with it on its merits.

### b. Statutory Framework for Attorney's Fees

Under the American Rule, the prevailing party is ordinarily not entitled to collect a reasonable attorney's fee from the loser. _Alyeska Pipeline Serv. Co. v. Wilderness Soc'y_, 421 U.S. 240, 247 (1975). This default rule can be overcome by statute and by contract. _Travelers Cas. and Sur. Co. of America v. Pacific Gas and Elec. Co._, 549 U.S. 443, 448 (2007).

California follows the American Rule. California Code of Civil Procedure §1021 says "[e]xcept as attorney's fees are specifically provided for by statute, the measure and mode of compensation of attorneys ... is left to the agreement, express

_Memo. Decis. Fees & Costs_                    8

or implied, of the parties." Section 1021 allows the parties to agree that the prevailing party in litigation may recover attorney's fees, whether the litigation sounds in contract or in tort. 3250 Wilshire Blvd. Bldg. v. W.R. Grace & Co., 990 F.2d 487, 489 (9th Cir. 1993) (language of agreement determines whether party entitled to fees or costs; agreement covered tort claims because it covered suits with "respect to subject matter or enforcement" of agreement); Xuereb v. Marcus & Millichap, Inc., 3 Cal.App.4th 1338, 1341 (1992) (agreement providing for fees and costs in any "lawsuit or other legal proceeding" to which the "agreement gives rise" was broad enough to cover contract and tort claims).

Code of Civil Procedure §1032(b) says "except as otherwise expressly provided by statute, a prevailing party is entitled as a matter of right to recover costs in any action or proceeding." Code of Civil Procedure §1033.5 lists the items that are allowable as costs under §1032. Attorney's fees are included in costs "when authorized by contract." Code Civ. Proc. §1033.5(a)(10)(A).

Under California Civil Code §1717(a), "in any action on a contract, where the contract specifically provides that attorney's fees and costs which are incurred to enforce that contract, shall be awarded either to one of the parties or to the prevailing party, then the party who is determined to be the party prevailing on the contract, whether he or she is the party specified in the contract or not, shall be entitled to reasonable attorney's fees in addition to other costs."

Case: 14-04119   Doc# 86   Filed: 02/02/17   Entered: 02/02/17 15:42:03   Page 9 of 21

Civil Code §1717 does not apply to tort claims; it determines which party, if any, is entitled to attorney's fees on a contract claim. <u>Stout v. Turney</u>, 22 Cal.3d 718, 730 (1978) (action for fraud arising out of a contract to sell real property was not an action on a contract within the meaning of Civil Code §1717); <u>Santisas v. Goodin</u>, 17 Cal.4th 599, 615 (1998) (complaint alleging failure to disclose defects in sales transaction sounded in tort and was entirely outside the scope of Civil Code §1717).

Against this background, the questions are whether this §523(a)(2)(A) case was an "action on a contract," and, if not, whether the attorney's fee provisions in the APA are broad enough to cover a tort claim.

**c. Code of Civil Procedure §1021 – Language of the Agreement**

The attorney's fee provision in §12.9 of the APA provided:

> In event suit is brought or an attorney is retained by any party to this Agreement to enforce the terms of this Agreement or to collect any moneys due hereunder, the prevailing party shall be entitled to recover reimbursement for reasonable attorneys' fees, court costs, costs of investigation and other related expenses incurred in connection therewith.

The basic goal in contract interpretation is to give effect to the parties' mutual intent at the time of contracting. When a contract is reduced to writing, the parties' intention is determined from the writing alone, if possible. Cal. Civ. Code §1639. The words of a contract are to be understood in their ordinary and popular sense. Cal. Civ. Code §1644.

While the case law in this area is not a model of clarity, there are several cases that guide the court in interpreting an attorney's fee provision such as this one. In short, provisions

*Memo. Decis. Fees & Costs*                    10

such as §12.9 - by its terms limited to *enforcement* of the terms

or *collection* of what is owed - have been held not to extend to

fees incurred in litigating tort claims. <u>Exxess Electronixx v.</u>

<u>Heger Realty Corp.</u>, 64 Cal.App.4th 698, 707-708 (1998) (an action

or proceeding to "enforce the terms or declare rights" under a

lease did not cover fraud claims); <u>Sharma v. Salcido (In re</u>

<u>Sharma)</u>, 2013 WL 1987351, *18 (9th Cir. B.A.P. 2013) (suit to

"enforce or interpret" a settlement agreement did not cover fees

in a §523(a)(2)(A) case involving fraud in inducement of

settlement agreement). In contrast, provisions with broader

language - suits arising from or with respect to the subject

matter or enforcement of a contract - have been held to  extend

to fees incurred in litigating tort claims. <u>3250 Wilshire Blvd.</u>

<u>Building v. W.R. Grace & Co.</u>, 990 F.2d 487, 489 (9th Cir. 1993)

(contract providing for fees for any suit with respect to "the

subject matter or enforcement" of contract covered tort claims);

<u>Santisas v. Goodin</u>, 17 Cal.4th 599, 608 (1998) (agreement for

fees for any "litigation arising out of the execution" of

agreement or sale of property covered tort claims); <u>Xuereb v.</u>

<u>Marcus & Millichap, Inc.</u>, 3 Cal.App.4th 1338, 1341 (1992)

(agreement providing for prevailing party fees in "any lawsuit or

other legal proceeding to which it gives rise" covered tort

claims including events that occurred prior to agreement's

formation).

Plaintiffs argue that their intention was to have the

attorney's fee provision in §12.9 of the APA cover this

litigation. While their subjective intention is not relevant

*Memo. Decis. Fees & Costs*                    11

1   here, if that was in fact their intention, the language they

2   chose - enforce or collect - did not convey that meaning. The

3   court will not rewrite the APA for them at this point. Plaintiffs

4   are not entitled to an award of attorney's fees under this

5   provision of the APA. They did not seek to enforce the APA or the

6   2009 Agreement by this adversary proceeding; they sought damages

7   for fraud based on §523(a)(2)(A).

8           **d. Civil Code §1717 - Action on a Contract**

9           Plaintiffs argue that their §523(a)(2)(A) claim was an

10  "action on a contract" because fraudulent misrepresentations or

11  omissions were made in the representations and warranties in the

12  2009 Agreement which induced plaintiffs to proceed with the

13  transaction. Defendants counter that it was instead a tort case

14  relying on a theory of fraud in the inducement regarding the 2009

15  Agreement.

16          The Ninth Circuit instructs this court to look to California

17  law to determine whether this was an action "to enforce or avoid

18  enforcement" of a contract to determine whether Civil Code §1717

19  applies. <u>Penrod v. AmeriCredit Financial Services, Inc. (In re</u>

20  <u>Penrod</u>), 802 F.3d 1084 (9th Cir. 2015).

21          First, under established California law, a tort claim does

22  not "enforce" a contract. <u>Stout v. Turney</u>, 22 Cal.3d 718, 730

23  (1978); <u>Santisas v. Goodin</u>, 17 Cal.4th 599, 615 (1998).

24          Second, the dischargeability of a debt under §523(a)(2)(A)

25  resolves a tort claim. <u>Candland v. Ins. Co. of N. Am. (In re</u>

26  <u>Candland)</u>, 90 F.3d 1466, 1470 (9th Cir. 1996) (discussing

27  elements of §523(a)(2)(B) case). To prevail on a §523(a)(2)(A)

28  *Memo. Decis. Fees & Costs*              12

theory, and the analogous common law fraud theory, a plaintiff must prove (1) the debtor made a misrepresentation or fraudulent omission; (2) with knowledge of its falsity; (3) with the intention of deceiving the creditor; (4) that the creditor relied on the representation; and (5) the creditor sustained damage as a proximate result. <u>Turtle Rock Meadows Homeowners Ass'n v. Slyman (In re Slyman)</u>, 234 F.3d 1081, 1085 (9th Cir. 2000) (all five elements of common law fraud under California law must be proven to support non-dischargeability under §523(a)(2)(A)).

The court does not find plaintiffs' analysis of this issue persuasive. Plaintiffs cite <u>Heritage Ford v. Baroff (In re Baroff)</u>, 105 F.3d 439, 443 (9th Cir. 1997) for the general idea that courts interpret liberally whether an action is on a contract. Plaintiffs then cite <u>Bos v. Board of Trustees</u>, 818 F.3d 486, 489 (9th Cir. 2016) for the uncontroversial proposition that three conditions must be satisfied for an action to be considered on a contract: the contract must contain a provision regarding the award of fees to one of the parties; the action in which the fees are incurred must be on a contract, the party seeking fees must have prevailed.[3] From this point, plaintiffs leap to three broad statements: an action is on a contract if it (1) "involves" a contract (citing <u>In re Tobacco Cases I</u>, 193 Cal.App.4th 1591, 1601 (2011)); (2) seeks to enforce a contract (citing <u>Penrod</u>, 802 F.3d at 1088); or (3) seeks to determine rights or duties under a

_____

[3] There is no question that the first and third conditions are satisfied. The only issue here is whether this adversary proceeding was an action on a contract.

Case: 14-04119   Doc# 86   Filed: 02/02/17   Entered: 02/02/17 15:42:03   Page 13 of 21

contract (citing _Exxess Electronixx v. Heger Realty Corp._, 64 Cal.App.4th 698, 707 (1998)).

In _In re Tobacco Cases I_, after acknowledging that California courts liberally interpret the phrase on a contact, the court held that litigation involving the enforcement of a consent decree was an action on a contract for purposes of Civil Code §1717. _In re Tobacco Cases I_, at 1600-1601. This case sheds no light on the issue before the court. In _Penrod_, the Ninth Circuit held that a creditor's objection to confirmation of a chapter 13 plan was an action on a contract because the source of the right asserted in the objection was a provision of the contract and resolution required interpretation of the contract. _Penrod_, at 1088. _Penrod_ provides no support for plaintiffs' argument; whether that contested matter involved a tort claim was not an issue. In _Exxess Electronixx_, after stating that tort claims for breach of fiduciary duty and constructive fraud did not enforce the terms of a lease, the court did say a declaratory relief action sounded in contract. _Exxess_, at 710. This adversary proceeding is not a declaratory relief action and _Exxess_ provides no support for plaintiffs' claim that Civil Code §1717 applies here.

While plaintiffs cite _Bos v. Board of Trustees_, 818 F.3d 486, 489 (9th Cir. 2016) as supporting their argument, in fact it does no such thing. In _Bos_, the Ninth Circuit held that the §523(a)(4) case before it was not within the ambit of Civil Code §1717. Relevant to plaintiffs' contention, the Ninth Circuit pointed out that:

Case: 14-04119   Doc# 86   Filed: 02/02/17   Entered: 02/02/17 15:42:03   Page 14 of 21

_Santisas_ and relevant Ninth Circuit cases establish not just a rule of inclusion, but also a rule of exclusion: that if the bankruptcy court did not need to determine whether the contract was enforceable, then the dischargeability claim is not an action on the contract within the meaning of [Civil Code] §1717.

_Bos_, at 489 (citing _Redwood Theaters, Inc. v. Davison (In re Davison)_, 289 B.R. 716, 723 (9th Cir. B.A.P. 2003).

Here, whether the APA or the 2009 Agreement were enforceable was never a question and the interpretation of these agreements was never an issue. Based on the above, this was not an action on a contract. The APA and the 2009 Agreement provided the context out of which this dispute arose, but this was not an action on a contract. Civil Code §1717 does not provide a basis to award attorney's fees.

**e. The APA's Indemnity Provision**

In §11.6(a) of the APA, defendants, as sellers, agreed to "defend, indemnify and hold" plaintiffs, as buyers, "harmless from and against any and all loss, damage, liability, action or proceeding, including, without limitation, attorney's fees resulting from or arising out of (i) any inaccuracy in or breach of any representation, warranty, covenant, or obligation made or incurred by sellers" in the APA or related agreements.

Plaintiffs contend that §11.6(a) entitles them to indemnification from defendants for all loss in this litigation, including attorney's fees. They then claim that §11.6(c) is a third party indemnification provision that entitles them to indemnification from defendants for all losses, including attorney's fees, if plaintiffs are embroiled in litigation with

_Memo. Decis. Fees & Costs_                    15

third parties.

Assuming (only for the sake of argument) that the language of §11.6(a) is broad enough to cover a tort claim such as this one, the question is whether it applies in litigation between the parties to the APA. For several reasons, the court finds that §11.6(a) does not operate as plaintiffs contend and §11.6 is merely a third party indemnity provision.

Indemnity agreements are construed under the same rules governing the interpretation of other contracts. Myers Building Industries, Ltd. v. Interface Technology, Inc., 13 Cal.App.4th 949, 969 (1993).[4]

As the Ninth Circuit has explained:

A written contract must be read as a whole and every part interpreted with reference to the whole. Furthermore, a court must give effect to every word or term employed by the parties and reject none as meaningless or surplusage. Therefore, we must interpret the contract in a manner that gives full meaning and effect to all of the contract's provisions and avoid a construction of the contract that focuses only on a single provision.

In re Crystal Props., Ltd., L.P., 268 F.3d 743, 748 (9th Cir. 2001) (quotation marks and internal citations omitted); See also Natural Resources Defense Council, Inc. v. County of Los Angeles, 725 F.3d 1194, 1206 (9th Cir. 2013) (rejecting strained and unreasonable interpretation of contract); Mastrobuono v. Shearson

---

[4] California Civil Code §2772 provides that "[i]ndemnity is a contract by which one engages to save another from a legal consequence of the conduct of one of the parties, or of some other person."  Civil Code §2778(1)-(7) is a set of rules to be applied in interpreting an indemnity contract. Civil Code §2778(3) provides that an indemnity against claims, or demands, or liability embraces the costs of defense against such claims. That is, attorney's fees are included by statute.

Case: 14-04119   Doc# 86   Filed: 02/02/17   Entered: 02/02/17 15:42:03   Page 16 of 21

_Lehman Hutton, Inc._, 514 U.S. 52, 63 (1995) (it is a cardinal

principle of contract construction that a document should be read

to give effect to all of its provisions and to render them

consistent with each other).

First, §12.9 of the APA contains a specific attorney's fee

clause. Interpreting §11.6(a) as another attorney's fee provision

that is implicated in a dispute between the parties to the APA

renders §12.9 surplusage. Section 11.6(a) may arguably be a more

expansive fee provision because it uses the phrase "resulting

from or arising out of" any breach of any warranty. However,

plaintiffs' interpretation is precluded by the authorities

described above; it would make §12.9 surplusage and is therefore

an unreasonable interpretation of the APA.

Second, beyond that threshold point, a significant body of

California case law supports a finding that §11.6, in its

entirety, is a third party indemnification provision and does not

work as a prevailing party attorney's fee provision. The general

rule is that including attorney's fees as an item of loss in a

third party indemnity provision does not constitute a provision

for the award of attorney's fees in an action on the contract

itself which is required to trigger Civil Code §1717. _Carr_

_Business Enterprises, Inc. v. City of Chowchilla_, 166 Cal.App.4th

14, 20 (2008) (citing _Myers Building Industries, Ltd. v._

_Interface Technology, Inc._, 13 Cal.App. 4th 949, 969 (1993)).

In _Alki Partners, LP v. DB Fund Services, LLC_, 4 Cal.App.5th

574 (2016), the court explained how courts distinguish third

party indemnification provisions from provisions for the award of

_Memo. Decis. Fees & Costs_                    17

attorney's fees incurred in litigation between the parties to the contract. First, the "key indicator is an express reference to indemnification. A clause that contains the words 'indemnify' and 'hold harmless' generally obligates the indemnitor to reimburse the indemnitee for any damages the indemnitee becomes obligated to pay third persons - that is, it relates to third party claims, not attorney fees incurred in a breach of contract action between the parties to the indemnity agreement itself." _Id._, at 600 (citing <u>Carr Business Enterprises, Inc. v. City of Chowchilla</u>, 166 Cal.App.4th 14, 20 (2008). The indemnification provision in §11.6(a) uses this "shall indemnify and hold harmless" language which is a strong indication it was only intended to cover third party claims.

Second, courts examine the context in which the language appears. _Id._, at 600. If the surrounding provisions describe third party liability, the clause will be construed as a standard third party indemnification provision. <u>Id</u> (citing <u>Myers Building Industries, Ltd. v. Interface Technology, Inc.</u>, 13 Cal.App.4th 949, 970 (1993)(contract clause by which one party promised to indemnify the other from "any, all and every claim which arises out of the performance" of the contract dealt only with third party claims).

A review of all three sub-parts of §11.6 shows this is a third party indemnity provision. In §11.6(a), defendants, as sellers, agree to indemnify plaintiffs, as buyers; in §11.6(b), plaintiffs, as buyers agree to indemnify sellers. In §11.6(c), the mechanics of addressing a third party indemnity claim are

_Memo. Decis. Fees & Costs_                    18

explained. Section 11.6(c) begins by saying if "any legal proceedings shall be instituted or any claim is asserted by any third party in respect of which any Party may be entitled to indemnity," then proceeds to describe the obligation to give notice and the ability to participate in or control such an indemnity action. Read together, these three sub-parts of §11.6 show that this is a third party indemnification provision and does not, for this additional reason, support an award of attorney's fees here.

**f. Costs**

Plaintiffs seek an award of $11,748.25 in costs, citing Rule 7054(b) and 28 U.S.C. §1920 as the basis for awarding costs. Rule 7054(b)(1) provides that the court may allow costs to the prevailing party and costs may be taxed by the clerk on 14 days' notice. Although the request for costs is technically untimely, for the reasons previously discussed, the court will consider it on its merits.

Plaintiffs' request for costs does not provide the documentation required by Civil Local Rule 54-1(a) or comply with substantive limitations in 28 U.S.C. §1920. Civil Local Rule 54-1(a), applicable here by Bankruptcy Local Rule 1001-2, requires a prevailing party claiming taxable costs to serve and file a bill of costs. The bill of costs must state separately and specifically each item of taxable costs claimed and must be supported by an affidavit pursuant to 28 U.S.C. §1924 that the costs are correctly stated, were necessarily incurred, and are allowable by law. In addition, appropriate documentation must be

*Memo. Decis. Fees & Costs*                    19

attached to the bill of costs.

Plaintiffs did not file a bill of costs, and did not provide any evidentiary support for their costs. In addition, plaintiffs' $11,748 total includes (1) many items that are not within the categories stated in §1920(1)-(6); (2) many items that pre-date the filing of this bankruptcy case; and (3) many items that appear to involve the defendants' main case rather than this adversary proceeding. At the hearing on this motion, plaintiffs' counsel conceded that the requested costs were not in line with §1920 and offered no authority for including costs incurred in other proceedings.

For these reasons, the court exercises its discretion to decline to award costs.

**IV. Conclusion**

For the foregoing reasons, the motion for attorney's fees and costs is denied.

**V. Order**

Based on the above, plaintiffs' motion is denied. Each side shall bear their own costs in this adversary proceeding. The clerk's office is directed to close this adversary proceeding following docketing of the Memorandum Decision and Order.

**\* \* \* End of Memorandum Decision and Order \* \* \***

*Memo. Decis. Fees & Costs*                    20

**Court Service List**

No service required.

*Memo. Decis. Fees & Costs*                    21